UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA, FOR THE USE AND BENEFIT OF D. HAYES ENTERPRISE, LLC,**     Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-868** |
| **JUSTIN J. REEVES, LLC, ET AL.,**     Defendants | **SECTION: "E" (4)** |

## ORDER AND REASONS

Before the Court is a motion to dismiss and compel arbitration, or in the alternative, stay the case, filed by Defendants, Justin J. Reeves, LLC, ("JJR") and Nationwide Mutual Insurance Company ("Nationwide") (sometimes referred to as "the Defendants").[1] Plaintiff, D. Hayes Enterprise, LLC, filed an opposition.[2] Defendants filed a reply.[3]

## BACKGROUND

Plaintiff, a subcontractor, alleges that on October 15, 2021, it contracted with JJR, the general contractor for a project on behalf of the United States Army Corps of Engineers known as "Westshore Lake Pontchartrain Access Roads, Project Number W912P821C0046" ("the Project").[4] Nationwide issued a payment bond to secure JJR's payment to subcontractors on the Project.[5] Plaintiff alleges JJR stopped making

---

[1] R. Doc. 10.
[2] R. Doc. 12.
[3] R. Doc. 13.
[4] R. Doc. 1, p. 3.
[5] *Id.*

1

payments to Plaintiff for materials supplied and work performed.[6] In total, Plaintiff alleges JJR has failed to pay Plaintiff a sum of $1,549,083.86 for labor and materials.[7]

Plaintiff filed suit on April 5, 2024, asserting Miller Act[8] claims against both Defendants and a variety of state law breach of contract claims against JJR, including Failure to Pay claims under LA R.S. 9:2781, Louisiana Prompt Pay Act claims under LA R.S. 9:2784, penalties under LA R.S. 9:4856, detrimental reliance claims, and claims for damages.[9] As to Plaintiff's Miller Act claims against JJR as principal and Nationwide as surety, Plaintiff alleges the Defendants are "justly, truly, and solidarily indebted for all sums due to D. Hayes" under the Act.[10]

Defendants argue that Plaintiff breached the Project subcontract because Plaintiff "did not have the resources to fully fund and complete its scope of work," which prompted JJR to send Plaintiff a "Cure Notice" outlining is defaults.[11] Defendants say this caused JJR to limit the scope of Plaintiff's work on the Project and assume performance of the responsibilities assigned to JJR in the subcontract.[12] Defendants argue that JJR paid Plaintiff a total of $4,443,737.21, which constituted full payment under the subcontract, so Plaintiff is not entitled to more.[13]

Relative to the instant motion, Defendants seek to compel arbitration of this dispute because "the contract between JJR and [Plaintiff] contains a valid agreement and Plaintiff is contractually bound to arbitrate its claims and causes of action."[14] In the event

---

[6] *Id.* at p. 4.
[7] *Id.* at p. 5.
[8] 40 U.S.C. §§ 3131 *et seq.*
[9] *See generally id.*
[10] *Id.* at pp. 6-7.
[11] R. Doc. 10-1, p. 3.
[12] *Id.*
[13] *Id.*
[14] R. Doc. 10, p. 1.

the Court denies its request to send all claims to arbitration, the Defendants seek to stay the remainder of the proceedings pending the disposition of arbitration.[15]

## LEGAL STANDARD

### I. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") governs the enforceability of arbitration agreements.[16] The FAA "reflects the fundamental principle that arbitration is a matter of contract."[17] The United States Supreme Court has clarified that "federal [arbitration] policy is about treating arbitration contracts like all others, not about fostering arbitration."[18] "The FAA thereby places arbitration agreements on an equal footing with other contracts."[19] "Arbitration is a substitute for litigation whose purpose is to settle the parties' differences in a fast, inexpensive manner and in a tribunal chosen by them."[20] When presented with a motion to compel arbitration, a court must first assess "if the party has agreed to arbitrate the dispute" in a valid arbitration agreement, and second, "if any federal statute or policy renders the claims nonarbitrable."[21] Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."[22] A court assesses "whether the dispute in question falls within the scope

---

[15] R. Doc. 10-1, p. 1.
[16] 9 U.S.C. § 1, *et seq*.
[17] *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024).
[18] *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) ("The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'"); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stan. Junior Univ.*, 489 U.S. 468, 476 (1989).
[19] *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).
[20] *Hanlon v. Monsanto Ag Prod., LLC*, 124 So. 3d 535, 539 (La. Ct. App. 2 Cir. 10/9/13) (citing *Tubbs Rice Dryers, Inc. v. Martin*, 33 So.3d 926 (La. Ct. App. 2 Cir. 2010)).
[21] *Sherer v. Green Tree Servicing LLC*, 548 F.3d 379, 381 (5th Cir. 2008).
[22] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995).

3

of [the] arbitration agreement. A court should further consider "whether any federal statute or policy renders the claims nonarbitrable."[23]

## II. The Miller Act

The Miller Act imposes certain obligations on the prime contractor on any "contract of more than $100,000 . . . for the construction, alteration, or repair of any public building or public work of the Federal Government."[24] "The purpose of the Miller Act is to protect those whose labor and materials go into public construction projects and to insure that they will be paid."[25] "The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of" federal projects.[26] "The essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material."[27] Because the Miller Act "is highly remedial in nature," it "is entitled to a liberal construction and application . . . to effectuate" Congress's "intent to protect those whose labor and materials go into public projects."[28] "Parties often arbitrate non-Miller Act disputes while bringing civil actions under the Miller Act to preserve Miller Act claims."[29] A party may only expressly waive its Miller Act claims in writing.[30]

---

[23] *Cent. Rock Corp. v. Horton Constr. Co.*, No. 2:13-CV-00406-PM-KK, 2013 WL 12184300, at *2 (W.D. La. July 31, 2013) (citing *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009)).
[24] 40 U.S.C. § 3131(b).
[25] *Weiss*, 532 F.2d at 1013 (*citing Graybar Electric Co. v. John A. Volpe Construction Co.*, 387 F.2d 55 (5th Cir. 1967)).
[26] *U.S. for Benefit & on Behalf of Sherman v. Carter*, 353 U.S. 210, 216 (1957).
[27] *Id.* at 216-17.
[28] *Clifford F. MacEvoy Co. v. U.S. for Use & Benefit of Calvin Tomkins Co.*, 322 U.S. 102, 107 (1944) (citing *Fleisher Eng'g & Constr. Co. v. U.S., for Use & Benefit of Hallenbeck*, 311 U.S. 15 (1940)).
[29] *United States for Use of Top Flight Steel, Inc. v. Enter. Precast Concrete of Tex.*, LLC, No. 5:22CV142-RWS-JBB, 2023 WL 4553629, at *3 (E.D. Tex. June 15, 2023*), report and recommendation adopted*, No. 522CV00142RWSJBB, 2023 WL 4552286 (E.D. Tex. July 14, 2023); *see Weiss*, 532 F.2d at 1013.
[30] *JS&H Const. Co. v. Richmond Cnty. Hosp. Auth.*, 473 F.2d 212, 216 (5th Cir. 1973); 40 U.S.C. § 3131(c).

4

**LAW AND ANALYSIS**

Defendants argue "the Subcontract undisputedly contains an agreement to arbitrate the dispute at issue" and the entirety of the dispute at issue falls within the scope of the subcontract.[31] Defendants argue that no federal statute or policy prohibits all of Plaintiff's claims from proceeding to arbitration.[32] Defendants further argue that Nationwide, though a nonparty to the subcontract, should be permitted to compel arbitration of claims against it under equitable principles of contract, such as estoppel.[33] Defendants point out that, because Nationwide's claims are "inextricably tied" to those at issue between JJR and Plaintiff, Nationwide's liability is contingent upon the determination of the claims between the two contracting parties. As a result, they argue, since Nationwide as surety would otherwise have the ability to assert the right to compel arbitration *as a defense*, Nationwide should be allowed to compel arbitration.[34] Defendants alternatively argue that, if this Court declines to dismiss Plaintiff's claims, the Court should stay all of Plaintiff's claims against Nationwide while the remaining claims are submitted to arbitration.[35]

In opposition, Plaintiff first argues the claims against Nationwide are not subject to arbitration because, as surety, Nationwide was not party to the subcontract between Plaintiff and JJR, and Plaintiff never waived its Miller Act claim against Nationwide.[36] Plaintiff argues that its Miller Act claims are a matter of federal—not state—law, so the claims are not subject to arbitration under a state law estoppel theory. Further, Plaintiff

---

[31] *Id.*
[32] *Id.*
[33] *Id.* at pp. 7-8.
[34] *Id.* at p. 8.
[35] *Id.* at p. 10.
[36] R. Doc. 12, p. 4.

5

argues it would have had to expressly waive its Miller Act claims in writing pursuant to Section 31339(c) of the Act for the waiver to be effective as to Miller Act claims.[37]

In reply, Defendants argue that, because Plaintiff "does not dispute that the parties' Subcontract contains a valid and enforceable arbitration provision requiring JJR and Plaintiff to arbitrate their disputes," and there are no federal statutes or policies rendering the claims non-arbitrable, this Court must compel arbitration.[38] Defendants acknowledge the tension between the Miller Act and the FAA may be resolved by staying, not dismissing, the Miller Act claim pending arbitration of the underlying dispute.[39] Although Defendants initially sought dismissal of Plaintiff's claims against Nationwide, all parties now admit these claims should be stayed, not dismissed, under Fifth Circuit precedent.

**I.  Plaintiff entered a valid arbitration agreement in the Project subcontract with JJR; Plaintiff's claims against JJR are subject to arbitration.**

The relevant arbitration provision of the subcontract between Plaintiff and JJR states:

> *All disputes* not settled by negotiation or mediation shall be reserved until the final completion or termination of the Work and negotiation or mediation, at which time they shall be submitted to arbitration in accordance with the prevailing Construction Industry Rules of the American Arbitration Association, except as modified in this paragraph. A single arbitrator shall decide all disputes.[40]

The Court finds the arbitration agreement contained in the Project subcontract is valid and enforceable. Plaintiff does not dispute the validity and enforceability of the subcontract's arbitration clause.[41] There is no evidence, nor does Plaintiff argue, that the

---

[37] *Id.* at p. 5; 40 U.S.C. § 3131(c).
[38] R. Doc. 13, pp. 1-2.
[39] *Id.* at p. 2.
[40] R. Doc. 10-2, p. 3 (emphasis added). The arbitration clause goes on to detail the parties' agreed-upon arbitration procedure. *Id.*
[41] *See* R. Doc. 12.

6

provision has been waived. Plaintiff's claims fall within the scope of the arbitration agreement: the language "all disputes" clearly encompasses these claims.[42] Thus, the Court finds Plaintiff's claims against JJR are subject to arbitration.[43]

## II. Plaintiff's Miller Act claims against Nationwide, a nonsignatory to the Project contract, are not subject to arbitration.

"The Miller Act provides a federal right of action against a surety issuing a bond to a general contractor on a government construction project."[44] In *United States for and on behalf of Portland Construction Company v. Weiss Pollution Control Corporation*, the Fifth Circuit analyzed whether a party could waive its Miller Act causes of action by agreeing to arbitration via contract.[45] In *Weiss*, the plaintiff initiated arbitration proceedings while simultaneously filing suit in a district court on the same matter.[46] The district court dismissed the action pending arbitration.[47] The Fifth Circuit held that the district court improperly dismissed the plaintiff's action because

> [i]n dismissing the suit, the district court treated [plaintiff]'s demand for arbitration in accordance with the terms of its subcontract as a contractually agreed upon waiver of its Miller Act remedy or an election not to pursue that remedy . . . . By demanding arbitration . . . [plaintiff] did not waive its right to pursue its Miller Act remedy.[48]

Furthermore, the court reasoned that filing suit under the Miller Act was the only way for the plaintiff to avail itself of its federal cause of action against a surety who otherwise was

---

[42] *See United States v. Citi Approved Enter. LLC,* No. 6:21-CV-00386, 2021 WL 4076579, *2 (W.D. La. Aug. 10, 2021), *report and recommendation adopted*, No. 6:21-CV-00386, 2021 WL 4070929 (W.D. La. Sept. 7, 2021).
[43] *Id.* ("We also find that [plaintiff's] breach of contract claims fall within the scope of the arbitration agreement, as such claims are contemplated by the clear language of the agreement: '. . . Claim arising out of . . . this contract . . . or the breach thereof . . . .'").
[44] *Id.*
[45] 532 F.2d 1009 (5th Cir. 1976).
[46] *Id.* at 1011.
[47] *Id.*
[48] *Id.* at 1011-12.

not party to the project contract.[49] Finding "no inconsistency between arbitration and a subsequent suit on the Miller Act bond,"[50] the court remanded the case to the district court with instructions to reinstate the suit pending arbitration.[51]

Applying *Weiss*, district courts within this circuit have recognized that "Miller Act claims by a subcontractor for unpaid labor and materials are separate and distinct from those for general breach of contract . . . . [and] arbitration and Miller Act suits, are not, per se, inconsistent with one another."[52] In *United States v. Citi Approved Enterprise LLC*, the district court for the Western District of Louisiana held that because Miller Act claims are against the surety rather than against the contractor, these claims are outside the scope of the government project contract and not subject to arbitration.[53] The court reasoned that absent express contractual intent to subject Miller Act claims to arbitration, the court would not force the parties to arbitrate claims against non-parties to the contract at issue, nor would the parties be forced to arbitrate their Miller Act claims against any defendant that statutorily requires an express waiver.[54] Additionally, district courts have held that a plaintiff's claims against a surety, which was a non-signatory to the contract, would not be subject to arbitration without any contractual basis to do so.[55] This Court

---

[49] *Id.*
[50] *Id.* at 1012.
[51] *Id.* at 1013.
[52] *United States v. Citi Approved Enter. LLC*, No. 6:21-CV-00386, 2021 WL 4076579, *2 (W.D. La. Aug. 10, 2021), *report and recommendation adopted*, No. 6:21-CV-00386, 2021 WL 4070929 (W.D. La. Sept. 7, 2021).
[53] *Id.*
[54] *Id.*
[55] *See id.*; *United States for Use of Top Flight Steel, Inc. v. Enter. Precast Concrete of Tex., LLC*, No. 5:22CV142-RWS-JBB, 2023 WL 4553629, *8-9 (E.D. Tex. June 15, 2023), *report and recommendation adopted*, No. 522CV00142RWSJBB, 2023 WL 4552286 (E.D. Tex. July 14, 2023) ("the Court finds no basis to compel arbitration of [the plaintiff's] Miller Act claims against non-signatories . . . under the valid arbitration agreement in the Sub-subcontract with [defendant contractor]."); *see United States for Use & Benefit of Indus. Roofing & Constr., LLC v. W. Sur. Co.*, No. CV 23-2119, 2023 WL 8355555, *6-7 (E.D. La. Dec. 1, 2023).

finds this line of reasoning persuasive and will not subject Plaintiff's Miller Act claims against Nationwide to arbitration.

With respect to Defendants' arguments that, if this Court does not compel arbitration of Plaintiff's claims against Nationwide, Plaintiff still should be equitably estopped from litigating its claims against Nationwide, this Court finds Defendants' arguments unpersuasive. "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'"[56] Defendants point out that the Fifth Circuit has permitted non-signatories to claim equitable estoppel to compel arbitration in other contexts.[57] Courts have recognized equitable estoppel as a defense to Miller Act claims when the subcontractor made "misleading misrepresentation[s] to the general contractor" and the surety.[58] Congress intended the Miller Act "to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to his suppliers of labor and material."[59] Courts have adhered to congressional intent in protecting these interests through rejecting a surety's equitable estoppel defense out of deference to the purpose of the Miller Act, particularly when there is no evidence the party was "misled to its detriment" or that the subcontractor otherwise engaged in misleading conduct.[60] Additionally, the Miller Act requires express,

---

[56] *S. Energy Homes, Inc. v. Godwin*, 183 F. App'x 441, 444 (5th Cir. 2006) (quoting *Wash. Mut. Fin. Group, L.L.C. v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)).
[57] *See Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524 (5th Cir. 2000) (compelling arbitration of a nonsignatory on causes of action between diverse parties); *see Trinity Pipe & Fittings, Inc. v. Fid. & Deposit Co. of Md.*, No. CIV. A. 88-1155, 1988 WL 58418, at *2 (E.D. La. June 1, 1988) ("[C]laims on Miller Act bonds involve the interpretation and application of federal law; state law does not control.").
[58] *See, e.g., U.S. f/u/b/o Damuth Servs., Inc. v. W. Sur. Co.*, 368 F. App'x 383, 388 (4th Cir. 2010).
[59] *U.S. for Benefit & on Behalf of Sherman v. Carter*, 353 U.S. 210, 216 (1957).
[60] *U.S. ex rel. A & R Supply of Miss. v. Travelers Cas. & Sur. Co. of Am.*, 265 F. App'x 236, 238 (5th Cir. 2008) (affirming a district court's decision to reject a surety's estoppel defense on a Miller Act claim out of deference to the purpose of the Miller Act and because the Miller Act rights were not waived). *A&R Supply* did not involve an arbitration agreement.

9

written waiver of the right to bring an action in federal court.[61] The Defendants have not argued the Plaintiff made misleading representations to the contractor and the surety to their detriment or otherwise engaged in misleading conduct. Equitable estoppel does not apply in this context.

The Court will not submit Plaintiff's Miller Act claims against Nationwide, a non-signatory, to arbitration because it finds no contractual or equitable basis to do so. Plaintiff's cause of action under the Miller Act is not per se inconsistent with the commencement of an arbitration proceeding, especially given the ability for the Court to stay this matter.[62] As reasoned below, this Court will stay Plaintiff's Miller Act claims pending arbitration.

### III. Plaintiff's claims against Nationwide are stayed pending the outcome of arbitration.

The parties now agree that this Court should stay Plaintiff's Miller Act claims against Nationwide pending arbitration.[63] Defendants now seek dismissal only of

---

[61] 40 U.S.C. § 3133(c). *See Tacon Mech. Contractors, Inc. v. Aetna Cas. & Sur. Co.*, 860 F. Supp. 385, 387 (S.D. Tex. 1994), *aff'd*, 65 F.3d 486 (5th Cir. 1995) ("The venue provisions that mandate venue in a federal district court where the contract was to be performed protect the surety.").
[62] *See U.S., for & on behalf of Portland Const. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976).
[63] Defendants no longer seek dismissal of Plaintiff's Miller Act claims against Nationwide under Rule 12(b)(3). *See* R. Doc. 13, p. 4 ("JJR and Nationwide respectfully move the Court to grant their motion to compel arbitration between D. Hayes and JJR and stay the litigation between D. Hayes and Nationwide, while reserving jurisdiction before this Court to enforce the terms of such order or any future award issued in the arbitration."). Initially, Defendants argued the Supreme Court and the Fifth Circuit have held that, because an arbitration agreement functions as a type of forum-selection clause, parties may seek to dismiss actions for improper venue under Rule 12(b)(3). R. Doc. 10-1, p. 5. *See, e.g., Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *Gezu v. Charter Commc'ns.*, 17 F.4th 547, 554 n.7 (5th Cir. 2021); *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472 n.3 (5th Cir. 2010). The Supreme Court and the Seventh Circuit have clarified that forum-selection clauses are not appropriately analyzed under Rule 12(b)(3). *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978 (7th Cir. 2024) ("[A] motion to dismiss under Rule 12(b)(3) is not the proper means of enforcing an arbitration agreement in the first place . . . . The Supreme Court has squarely held that forum-selection clauses do not make venue 'improper' within the meaning of Rule 12(b)(3)."); *see Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013) ("Atlantic Marine contends that a party may enforce a forum-selection clause by seeking dismissal of the suit under § 1406(a) and Rule 12(b)(3). We disagree. Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.' Whether venue is 'wrong' or 'improper' depends

Plaintiff's claims against JJR. Because Plaintiff's claims against JJR are subject to arbitration, this Court must stay, rather than dismiss, the litigation with respect to the claims against JJR.

Pursuant to the FAA, when referred to arbitration, the court in which the suit is pending "*shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[64]  The United States Supreme Court in *Smith v. Spizzirri* recently held that section 3 of the FAA requires that "[w]hen a federal court finds that a dispute is subject to arbitration, and a party has requested a stay of the court proceeding pending arbitration, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration."[65] The Court held that the word "shall" "creates an obligation impervious to judicial discretion," which "overrides any discretion a district court might otherwise have had to dismiss a suit when the parties have agreed to arbitration."[66] Further, the Fifth Circuit in *Weiss* noted that "the Federal Arbitration Act specifically provides for a stay rather than a dismissal [of Miller Act claims]."[67] Applying *Smith* and *Weiss*, this Court must stay these proceedings pending arbitration.[68]

---

exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause.").
[64] 9 U.S.C. § 3 (emphasis added).
[65] *Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024).
[66] *Id.* at 476-77. The Supreme Court reasoned that Congress contemplated mandatory stays under the FAA rather than dismissals because "[i]f a district court [could] dismiss[] a suit subject to arbitration even when a party requests a stay, that dismissal triggers the right to an immediate appeal where Congress sought to forbid such an appeal." *Id.* at 478. The FAA only allows for appeal of an order *denying* motions to compel arbitration.
[67] 532 F.2d 1009, 1013 (5th Cir. 1976); *see, e.g.*, *United States v. Citi Approved Enter. LLC*, No. 6:21-CV-00386, 2021 WL 4076579, *2 (W.D. La. Aug. 10, 2021) (staying litigation of Miller Act claims pending arbitration).
[68] *See, e.g.*, *Nizuze v. Tex. Health Res.*, No. 4:23-cv-1082, 2024 WL 3708919 (E.D. Tex. June 14, 2024) (applying *Smith* and staying litigation pending arbitration).

Additionally, this Court has discretion to grant the stay with respect to Plaintiff's Miller Act claims under its broad discretionary powers.[69] This Court's ability to stay Plaintiff's Miller Act suit pending arbitration comports with principles of judicial economy. The Court will grant a stay because the results of the arbitration are binding on the parties, and the stay will "foreclose[e] further litigation" on issues of liability already decided.[70]

## CONCLUSION

**IT IS ORDERED** that Defendants' "Motion to Dismiss and Compel Arbitration Pursuant to FRCP 12(B)(3) and, in the Alternative, Stay Litigation"[71] is **GRANTED IN PART AND DENIED IN PART**.

The motion is **DENIED** with respect to Defendants' motion to dismiss pursuant to 12(b)(3).[72]

The motion is **DENIED** with respect to Defendants' request to compel arbitration of Plaintiff's Miller Act claims against Nationwide.

The motion is **GRANTED** with respect to Defendants' request to compel arbitration of Plaintiff's claims against JJR.

The motion is **GRANTED** with respect to Defendants' request to stay this litigation pending arbitration**.**

---

[69] *Cent. Rock Corp. v. Horton Constr. Co.*, No. 2:13-CV-00406-PM-KK, 2013 WL 12184300, at *5 (W.D. La. July 31, 2013); *U.S. ex rel. Milestone Tarant, LLC v. Fed. Ins. Co.*, 672 F. Supp. 2d 92, 100 (D.D.C. 2009) ("Where the issues are not 'referable to arbitration,' however, the courts have discretionary power to stay civil proceedings pending the resolution of arbitration.").
[70] *Milestone*, 672 F. Supp. 2d at 101-02 (citing with approval *U.S., for & on behalf of Portland Const. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976)) (noting that if the general contractor were to prevail during arbitration, the subcontractor would likely be collaterally estopped from proceeding in litigation against the surety).
[71] R. Doc. 12.
[72] This portion of the motion is moot as the argument has been withdrawn.

The Clerk of Court shall **STAY AND ADMINISTRATIVELY CLOSE** this case, to be reopened, if necessary and upon written motion by a party, after arbitration is completed.

**New Orleans, Louisiana, this 30th day of August, 2024.**

_____
**SUSIE MORGAN
UNITED STATES DISTRICT JUDGE**